# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MICHELE GRAY,

                                                    Plaintiff,

            vs.                                                          1:20-CV-714
                                                                         (TJM/ATB)

GC SERVICES/APPLE,

                                                    Defendant.

MICHELE GRAY, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil complaint filed by pro se plaintiff Michele

Gray. (Dkt. No. 1)  Plaintiff has also filed an application to proceed in forma pauperis

("IFP"), a motion for appointment of counsel, and a motion for permission to file papers

electronically. (Dkt. Nos. 2, 3, 4).

## I.    IFP Application

Plaintiff declares in her IFP application that she is unable to pay the filing fee.

(Dkt. No. 2).  After reviewing this application, this court finds that plaintiff is

financially eligible for IFP status.[1]

---

[1] The court must make one observation regarding plaintiff's IFP application.  On its face, plaintiff's application for IFP status shows that she qualifies financially for IFP because her only income appears to be Social Security Disability Benefits, and she has dependent children who she supports. (Dkt. No. 2).  However, the court is aware that on the same day she filed this action, plaintiff also filed five other actions in the Northern District of New York. *See Gray v. United States Department of Justice*, No. 1:20-CV-712 (GLS/DJS); *Gray v. Poland Spring Water*, No. 1:20-CV-713 (DNH/DJS); *Gray v. Amazon*, No. 1:20-CV-715 (MAD/DJS); *Gray v. American Broadcast Company*, No. 1-20-CV-716 (MAD/CFH); and *Gray v. Fidelity Investment*, No. 1:20-CV-718 (DNH/CFH). Plaintiff paid the filing fee for her first-filed action. *Gray v. U.S. Dep't of Justice*, No. 1:20-CV-712

In addition to determining whether plaintiff meets the financial criteria to proceed

IFP, the court must also consider the sufficiency of the allegations set forth in the

complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the

case at any time if the court determines that the action is (i) frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the

complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319,

325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court

process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at

327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a

duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering

*sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and

has had an opportunity to respond, the court still has a responsibility to determine that a

claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East

Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court

may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing

fee).

To survive dismissal for failure to state a claim, the complaint must contain

---

(GLS/DJS) (Dkt. No. 1).

sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*,

550 U.S. at 555).  The court will now turn to a consideration of the plaintiff's complaint

under the above standards.

## II.    Complaint

Plaintiff is attempting to sue her former employer, GC Services/Apple[2] ("GC

Service"). (Complaint ("Compl.") (Dkt. No. 1).  Plaintiff states that she began working

for GC Services as a customer service representative.[3] (Compl. at 1).[4]  Plaintiff states

that, during the time that she worked for GC Services, there were many "concerns" that

she wished to address with the company, but that plaintiff's manager, and her

"manager's manager" did not wish to address those concerns. (*Id.*)

Plaintiff states that she was preparing to resign her position, and wrote a letter of

---

[2] The court notes that plaintiff is not suing "Apple."  Her proposed summons lists only GC Services in Mesa, Arizona as a defendant.  The GC Services website states that the company "provides award-winning customer care and account receivables management services to some of the most respected companies nationwide, including many Fortune 500 companies." https://gcservices. marketing/ It appears to be, inter alia, a debt collection agency. *Id.*  It appears that Apple was one of GC Services clients.  The court notes that the address for GC Services Limited Partnership on plaintiff's attached 2019 W-2 form is in Houston, Texas. (Compl. at 22, Ex. 1).

[3] On her letter of resignation, plaintiff lists her position as "a Home Based Customer Service Rep for Apple." (Compl. at 24, Ex. 2).

[4] Plaintiff has numbered the pages of her complaint.  Thus, I will cite to the page numbers as assigned by the plaintiff at the bottom center of her pages.

resignation, dated January 25, 2020, stating that her last day with the company would be February 2, 2020. (Compl. at 2).  However, after seeing the letter of resignation, plaintiff's manager Amber Hillert "terminated" plaintiff by making the resignation effective "immediately" on January 28, 2020. (*Id.*)  Plaintiff alleges that she was told that the reason for terminating plaintiff was that she moved from Las Vegas to New York.[5] (*Id.*)

Plaintiff states that, while she worked for this employer, she was not "given the same opportunity as other agents," and that she was not allowed to participate in "team meetings" until the "Plaintiff last[ed] four months."[6] (*Id.*)  Plaintiff states that she was not given proper customer service "coaching" which was given to "other" agents, until after her first "written" termination warning. (Compl. at 2-3).  Plaintiff states that she wished to dispute the "written warning" and sent several emails, which went unanswered by manager Amber Hillert. (Compl. at 3).  Plaintiff states that Ms. Hillert wanted to speak with plaintiff over the telephone, but plaintiff believed that a written email could be "checked" with other managers for "accuracy." (*Id.*)  Plaintiff states that she never received a reply to her emails. (*Id.* at 3-4).

Plaintiff claims that she sent several emails regarding her first, second, and third

---

[5] The complaint is not very clear.  Plaintiff states that she worked "home-based," and it appears that when she started working for the defendant, her "home" was in Las Vegas.  Plaintiff attached her 2019 W-2 form which lists a Las Vegas address. (Compl. at 22, Ex. 1).

[6] It is not clear from the complaint whether plaintiff was denied attendance at the "Team Meetings" for the entire time that she worked for GC Services or whether she was denied attendance until she worked for the company for four months.

4

warnings. (Compl. at 4).  Plaintiff continues to discuss these "warnings" and appears to state that she was never properly afforded the opportunity to "dispute" these warnings. She states that she was told that, although she could "reject" the warnings, her rejection would not change the outcome, and the "written warning" would "stay." (Compl. at 4). Plaintiff goes on to describe the subjects of her written warnings. (Compl. at 4-6). Plaintiff claims that she should have been given "verbal" warnings before the written warnings, and that "other" agents were allowed more than three chances to keep their jobs. (Compl. at 5-6).  Plaintiff states that "the extent of the information to assist customers could not be executed 100% without mistakes of [sic] flaws," but that she was held "percent"[7] responsible for any "mistakes or flaws" within the first thirty days of employment. (Compl. at 6).

Plaintiff also states that she received several "occurrences" for "lateness," which included being 4, 6, and 3 minutes late from her break. (Compl. at 6).  Plaintiff states that there were no exceptions or second chances "as for other agents." (*Id.*)  Plaintiff states that she tried to dispute these occurrences, but was told over the telephone that it did not "matter," and that the occurrences would "stay."[8] (Compl. at 6-7).  Plaintiff states that an employee would be terminated after ten "occurrences," but she only had

---

[7] Plaintiff may have meant to say that she was held "100 percent" responsible for any mistakes or "flaws" within the first thirty days of employment.

[8] Apparently Ms. Hillert also began "watching" the time that employees stayed in the bathroom. (Compl. at 7).  Plaintiff seems to state that this was one of the issues that she was attempting, but was unable to, dispute. (*Id.*)  The term "watching" may be misleading because it appears that plaintiff was working from her home.

seven when she was "terminated." (Compl. at 7).

Plaintiff states that she also had trouble with her "Q n A," which apparently involves an "Apple representative" monitoring the calls of 500 agents. (*Id.*) Plaintiff states that her Q n A was "lowered" from 90% to 67%, and that she met twice per week, with two different managers by video, while other agents did not have such meetings. (*Id.*) Plaintiff states that she asked for a "call sheet," and her score went back up to 97%. (*Id.*)

Plaintiff claims that she did everything to try to prevent additional written warnings, but that Ms. Hillert dropped plaintiff's Q n A back down to 70% when she questioned plaintiff about a call that may not have been transferred properly. (Compl. at 8). Plaintiff states that the manager was just looking for a way to terminate the plaintiff, and that "other" agents were not "receiving the same attention." (*Id.*) Plaintiff states that when the employer created an "incentive" game, plaintiff held the highest score.[9] Plaintiff then describes "Slack," which is a social platform for communication within the company. (Compl. at 9). Plaintiff states that "Slack" must be opened at the beginning of an employee's shift so that the managers could communicate with the employees. Employees were given a "'verbal or written'" warning if they did not respond to a manager's message on Slack. (*Id.*)

---

[9] Apparently, an employee was given points toward Amazon gift cards if he or she used the customer's name or used words like "spectacular" during the telephone call. (Compl. at 8).

Plaintiff states that when she first met Ms. Hillert in July of 2020,[10] she asked plaintiff "'How did you become employed by GC Services?'" (Compl. at 10). Plaintiff believes that was an inappropriate question. (*Id.*) Plaintiff states that she began to "question" the employment from that time and believed that "termination would occur." (*Id.*) Plaintiff states that she requested a change of manager at the beginning of her employment, and that she went over Ms. Hillert's head to her manager and then to someone named "Candy Keame." (*Id.*) However, the meeting with Ms. Keeme was postponed without date. (*Id.*) Plaintiff states that she "was more than willing to resign to prevent termination." (*Id.*)

Plaintiff states that with all the "mandatory overtime,"[11] the constant Q n As, the "occurrences," the "negative video meetings," and her attempt at emailing supervisors, plaintiff did her best to avoid the "written warnings," but there was nothing she could do. (Compl. at 10-11). Plaintiff seeks substantial monetary relief. (Compl. at 21).

## III.   Subject Matter Jurisdiction

### A.   Legal Standards

Federal courts are courts of limited jurisdiction, have only the power that is authorized by Article III of the Constitution, and may only preside over cases that fall within the subject matters delineated by Congress. *Bender v. Williamsport Area School*

---

[10] The court assumes that this is a typographical error, and plaintiff meant to write July of 2019.

[11] That was the first and last time in the complaint that plaintiff mention anything about "mandatory overtime" and did not explain the meaning or the context of that statement.

*Dist.*, 475 U.S. 534, 541 (1986) (citation omitted).  The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331.  Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

**B.     Application**

**1.     Federal Question**

Plaintiff asserts various federal statutes as bases for her claims in this action.

However, none of the statutes she cites apply to the facts she asserts in the complaint.

Plaintiff states that her employer committed a "tort" and attempts in various ways to

claim that this court has jurisdiction to hear her "tort" claim.  The court will discuss

each of the statutes cited by plaintiff to determine whether she has jurisdiction to bring

this action.[12]

**a.     5 U.S.C. § 7105**

In 1978, Congress enacted the Federal Service Labor-Management Relations

Statute ("FSLMRS") to govern labor relations between the executive branch and its

employees. *American Federation of Gov't Employees, AFL/CIO v. Trump*, 929 F.3d

748, 752 (D.C. Cir. 2019).  The FSLMRS is set forth in Title VII of the Civil Service

Reform Act ("CSRA"), codified at 5 U.S.C. §§ 7101-35. *Id.* (citing Pub. L. No. 95-454,

§ 701, 92 Stat. 1111, 1191-1216 (1978)).  The Statute also establishes a scheme of

administrative and judicial review. *Id.*  Administrative review is provided by the Federal

Labor Relations Authority (FLRA), a three-member agency charged with adjudicating

federal labor disputes, including "negotiability" disputes and "unfair labor practice"

---

[12] The court has a duty to interpret pro se pleadings liberally "to raise the strongest arguments
that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v.
Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

disputes. *Id.* (citing 5 U.S.C. § 7105(a)).  Thus, statute cited by plaintiff governs

employee relations in the *federal* sector and provides exclusive procedures by which

*federal* employees and bargaining representatives may assert federal labor- management

relations claims. *Id.* at 755.

Plaintiff does not state that she is a federal employee.  This statute does not apply

to her and does not give plaintiff a basis for claiming that her private company somehow

treated her unfairly or committed any other sort of alleged labor violation.  Thus, 5

U.S.C. § 7105 and any related sections of that statute, do not provide any basis for

federal court jurisdiction over any claims she may have against her former employer.[13]

### b.      29 U.S.C. §§ 157, 158

Plaintiff cites two sections of the National Labor Relations Act ("NLRA").

Section 157 guarantees the right of employees to "self-organization, to form, join, or

assist labor organizations, to bargain collectively through representatives of their own

choosing, and to engage in other concerted activities for the purpose of collective

bargaining or other mutual aid or protection." 29 U.S.C. § 157.  Section 158 defines

"unfair labor practices" under the statute, but deals only with conduct which interferes

with the rights protected in section 157, the rights to organize or bargain collectively. 28

U.S.C. § 158.

---

[13] The court notes that, even if plaintiff were a federal employee, the FSLMRS provides
complex administrative and judicial remedies to assert claims. *See American Federation of Gov't
Employees*, 929 F.3d at 752 (outlining the scheme of administrative and judicial review).

Once again, plaintiff has cited a statute that does not apply to any of the claims that she is making in her complaint.  Plaintiff claims that she was "terminated" unfairly, but not that she was prevented from joining a union or bargaining collectively.  Thus, plaintiff may not assert jurisdiction under the cited sections of the NLRA.

### c.   "Constitutional Tort"

Plaintiff states that the defendant committed a "constitutional tort" and cites *Monroe v. Pape*, 365 U.S. 167 (1961) and *Maine v. Thiboutot*, 448 U.S. 1 (1980). *Monroe v. Pape* was a case brought under 42 U.S.C. § 1983 which provides jurisdiction over constitutional and other federal law violations committed by defendants who act "under color of state law." *Monroe*, *supra*.  The court in *Monroe* held that a city was not a proper defendant under section 1983. *Id.*  However, *Monroe* was overruled in *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978).  The court in *Monell* held that Congress did intend that the protection of section 1983 applied to "conduct" by municipalities and other local government units which amounted to a custom or policy of the municipality. *Id.*  In *Maine v. Thiboutot*, the Supreme Court held that the section 1983 remedy "broadly encompasses violations of federal statutory as well as constitutional law." 448 U.S. at 4, 4-8.

Neither of these cases applies to afford plaintiff federal court jurisdiction based on the facts asserted in her complaint.  Plaintiff does not allege that the defendant is a state actor or act "under color of state law."  Her former employer appears to be a

11

private company which distributes Apple products and for which plaintiff was a

customer service representative for a short time.  Thus, section 1983 "constitutional

tort" does not apply to provide federal court jurisdiction over plaintiff's action.[14]

### d.    Title VII

Plaintiff also mentions Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq. (Compl. at 13-15).  Under Title VII, it is unlawful for an employer to

discriminate against any individual with respect to her compensation, terms conditions,

or privileges of employment, because of the individual's race, color, religion, sex or

national origin. 42 U.S.C. § 2000e-2(a)(1).  In order to state a claim under Title VII,

plaintiff must show that she was a member of a protected class, she was qualified for the

position, she suffered an adverse employment action, and the adverse employment

action occurred under circumstances giving rise to an inference of discriminatory intent.

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

The main thrust of plaintiff's claims appears to be that the defendant harassed her

to the point that she submitted a letter of resignation or was "constructively

discharged."[15]  Her managers did not allow her to participate in certain training, which

---

[14] Plaintiff also fails to describe what constitutional right was violated by the defendant's actions.  The closest right that could apply would be due process.

[15] Although plaintiff alleges that she was "terminated," she also states that she had written a letter of resignation.  Her manager accelerated plaintiff's last day of work, but did not "terminate" the plaintiff.  Thus, plaintiff's only potential claim is that she was "constructively terminated" due to her managers action or inaction.  In order to state a claim for constructive discharge, "a plaintiff must show that the employer 'intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily.'" *Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) (quoting *Terry v.*

adversely affected her performance, and were very picky with respect to lateness or

break time.  Plaintiff claims that "other" agents were not treated as strictly as she was

treated and "other" agents were allowed "extra" occurrences before they were

terminated.

However, plaintiff does not allege that any adverse action related to her job was

based upon plaintiff's membership in a protected class.  Plaintiff simply alleges that she

was treated differently than "other" agents, but does not give the alleged basis for the

disparate treatment.  The fact that plaintiff is a woman, and gender is a protected class,

does not save the complaint for plaintiff.  There must be a nexus between the protected

class and the adverse employment action or the disparate treatment. *See Blue v. City of*

*Hartford*, No. 3:18-CV-00974 (CSH), 2019 WL 1559430, at *2-3 (D. Conn. Apr. 10,

2019) (discussing nexus requirement).   Thus, plaintiff does not state a claim under Title

VII regardless of her claims that she was harassed or constructively discharged because

she does not allege that the defendant's actions were committed because of her

membership in a protected class.

### e.      Federal Tort Claim

Plaintiff also cites 28 U.S.C. § 2671, claiming that this statute provides for

---

*Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003)) (alterations in original).  The standard for constructive
discharge is "demanding" because "'a constructive discharge cannot be proven merely by evidence
that an employee . . . preferred not to continue working for that employer' or that 'the employee's
working conditions were difficult or unpleasant.'" *Id.* (quoting *Spence v. Maryland Cas. Co.*, 995 F.2d
1147, 1156 (2d Cir. 1993)) (alteration in original).

damages in "tort claims" to protect people from harms, resulting from the wrongful

conduct of "others." (Compl. at 15).  Sections 2671 et seq. of Title 28 of the United

States Code is known as the "Federal Tort Claims Act" ("FTCA").  The FTCA is a

limited waiver of sovereign immunity which applies to "claims against the United

States, for money damages . . . for injury . . . caused by the negligent or wrongful act or

omission of any employee of the Government while acting within the scope of his office

or employment, under circumstances where the United States, if a private person, would

be liable to the claimant in accordance with the law of the place where the act or

omission occurred." 28 U.S.C. § 1346(b).  The FTCA makes a lawsuit against the

United States itself the exclusive remedy for common law tort actions against federal

agencies or employees acting on behalf of the government. *Dowdy v. Hercules*, No. 07

Civ. 2488(EVEN) (LB), 2010 WL 169624, at \*4 (E.D.N.Y. Jan. 15, 2010) (citing inter

alia 28 U.S.C. § 2679(b)(1); *Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir.

1991)).

Clearly, plaintiff may not state a claim under the FTCA against her former

employer.  As stated above, the only defendant in an FTCA action is the United States,

and plaintiff's claim must first be denied administratively as a prerequisite to filing an

action in federal court against the United States. *Collins v. United States Postal* Service,

No. 18-CV-4752 (SJF) (ARL), 2020 WL 2734362, at \*4 (E.D.N.Y. May 26, 2020)

(citing *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir.

2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).  This requirement is jurisdictional and cannot be waived. *Id.*  Plaintiff is not suing the United States or any agency thereof.  Thus, to the extent that plaintiff attempts to assert jurisdiction under the FTCA, the complaint may be dismissed.

### f.      15 U.S.C. § 6611(b)(5)

Plaintiff claims that she may sue for damages under 15 U.S.C. § 6611(b)(5).  However, section 6611 of Title 15 of the United States Code provides for losses incurred as the result of Y2K, and discusses parties to a "Y2K action." 15 U.S.C.      § 6611.  The statute states that "[t]his chapter applies to any Y2K action brought after January 1, 1999, for a Y2K failure occurring before January 1, 2003, or for a potential Y2K failure that could occur or has allegedly caused harm or injury before January 1, 2003, including any appeal, remand, stay, or other judicial, administrative, or alternative dispute resolution proceeding in such an action." 15 U.S.C. § 6603(a).  Clearly, plaintiff may not take advantage of section 6611 to bring this law suit.

Plaintiff also cites Federal Rules of Appellate Procedure ("Fed. R. App. Proc.") 27(b). (Compl. at 16-17).  Fed. R. App. Proc. 27 provides for motions to be heard on appeal from the District Court, and Fed. R. App. Proc. 27(b) provides that the court may act on a motion at any time and may "authorize its clerk to act on specified types of procedural motions."  This rule of appellate procedure provides no basis for plaintiff to bring this action.

Finally, plaintiff cites 5 C.F.R. § 732.301.  This section of the Code of Federal

Regulations ("CFR") is entitled "Due Process," but applies to a federal agency's

adjudicative decision "under this part based on an OPM investigation . . . ."[16]  Clearly,

this section of the CFR does not apply to any of the facts asserted by the plaintiff, nor

does it confer jurisdiction over this action.

### 2.     Diversity

While it appears that the plaintiff and defendant are citizens of different states,

and plaintiff might be able to establish diversity of citizenship, she would still have to

state some sort of legal basis for her claims.  Plaintiff cites only the statutes listed above,

and thus does not establish any claims under either federal question or diversity

jurisdiction.  If plaintiff were alleging some state law causes of action, she might be able

to establish diversity jurisdiction, but she fails to clearly specify any such claims.[17]

---

[16] OPM refers to the Office of Personnel Management.

[17] There may also be a venue issue in this case.  Generally, venue in a particular district court is proper if (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a 'substantial part' of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and 'there is no district in which an action may otherwise be brought.'" *Nebgen v. Schentag*, No. 18 CIV. 8410 (ER), 2020 WL 1529452, at *3 (S.D.N.Y. Mar. 31, 2020) (quoting 28 U.S.C. § 1391(b)).  In an action brought under diversity jurisdiction, "a case may be brought in 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.'" *Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 1285513, at *14 (S.D.N.Y. Mar. 18, 2020) (quoting *Morgan Stanley & Co. v. Seghers*, No. 10 CIV. 5378 (DLC), 2010 WL 3952853, at *1 (S.D.N.Y. Oct. 8, 2010) (quoting 28 U.S.C. § 1391(a)(2)).  In this case, the defendant appears to be in Las Vegas, (or in Texas where the corporate offices may be located).  Although plaintiff lives in New York, she was working from home in Las Vegas at the time when a substantial part of the conduct of which plaintiff complains took place.  Plaintiff moved to New York, although it is unclear when the move took place, and plaintiff's citizenship is determinative for venue.  The court is not making any findings regarding venue because there are insufficient facts to make a determination.  However, it is simply noted that this may be an additional issue in this action.

## IV.   Opportunity to Amend

### A.   Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.   Application

Although the court is recommending dismissal of plaintiff's complaint, the court will afford plaintiff the opportunity to amend with respect to any claims that she may have for employment discrimination under Title VII.  Although plaintiff has not stated a claim as the complaint is written, the court cannot state that she would not be able to amend her complaint to state a claim if she alleges that she belongs to a protected class and that there was a nexus between the employment decision or the constructive discharge and the protected class to which she belongs.  None of the other statutes remotely apply to plaintiff's stated facts, and no attempt at amending based on any other of the statutes cites above should be allowed.[18]

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint

---

[18] If plaintiff is attempting to assert some claims based on diversity jurisdiction, including state law or other claims, she may assert them in any amended complaint, keeping in mind that venue in this district may be inappropriate.

must be a ***complete and separate pleading***.  Plaintiff must state all of her Title VII

claims in the new pleading and may ***not*** incorporate by reference, any part of her

original complaint.

## V.      Appointment of Counsel

Plaintiffs bringing civil actions have no constitutional right to the appointment of

counsel.  *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  However,

pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an

indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to

represent any person unable to afford counsel.").  In this case, plaintiff has moved for

appointment of counsel. (Dkt. No. 3).

When determining whether to appoint counsel for an indigent party, the court

must first determine whether the indigent's claim has "substance." *Terminate Control

Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police

Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).  This

action was only relatively recently commenced, and the only facts upon which this

Court may base its decision as to whether this lawsuit is of substance are the facts stated

in plaintiff's complaint, which I have found insufficient to establish subject matter

jurisdiction.  In addition, even if the court had allowed the case to go forward, where

there are merely unsupported allegations, the moving party does not meet the first

requirement imposed by the Second Circuit for appointment of pro bono counsel.  *See*

*Harmon v. Runyon*, No. 96 Civ. 6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Thus, the court will deny appointment of counsel at this time without prejudice.  If

plaintiff amends her complaint, and if the case ultimately goes forward, and survives

any initial dispositive motions, the court may reconsider appointment of counsel.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is

**GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITHOUT**

**PREJUDICE AS TO ANY TITLE VII CLAIMS, WITH LEAVE TO AMEND**, and

it is

**RECOMMENDED**, that plaintiff's complaint be **DISMISSED WITHOUT**

**PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION IN ALL**

**OTHER RESPECTS, WITHOUT LEAVE TO AMEND**, and it is

**RECOMMENDED**, that if the District Court adopts this Order and Report-

Recommendation, plaintiff be given the opportunity to amend her complaint **ONLY**

with respect to any potential Title VII employment discrimination claims as discussed

above, and if plaintiff does file a proposed amended complaint, plaintiff should be

warned that any amended complaint must be a ***complete and separate pleading***.

Plaintiff must state all of her Title VII claims in the new pleading and may ***not***

incorporate by reference, any part of her original complaint, and it is

19

**RECOMMENDED**, that if the District Court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, such proposed amended complaint be returned to me for initial review, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE**, and it is

**ORDERED**, that plaintiff's motion to file electronically (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE** at this time.  If the court adopts this Order and Report-Recommendation, and plaintiff submits a viable amended complaint, then plaintiff may reapply for electronic filing privileges.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 9, 2020

Andrew T. Baxter
U.S. Magistrate Judge

20