# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MICHELE GRAY,

|                          | Plaintiff, |            |
|--------------------------|------------|------------|
| v.                       |            | 1:20-CV-714 |
|                          |            | (TJM/ATB)  |
| GC SERVICES/APPLE,       |            |            |
|                          | Defendant. |            |

MICHELE GRAY, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

On July 9, 2020, I issued an Order and Report-Recommendation after an initial review of the plaintiff's civil complaint pursuant to 28 U.S.C. § 1915. (Dkt. No. 6). In that order, I granted the plaintiff's motion to proceed in forma pauperis ("IFP"), but recommended dismissal of the complaint, without prejudice to plaintiff filing an amended complaint with respect to certain claims. (*Id.* at 19-20). Instead of filing objections to the Order and Report-Recommendation, plaintiff filed an amended complaint on July 20, 2020. (Amended Complaint ("AC")) (Dkt. No. 7). On November 13, 2020, the Honorable Thomas J. McAvoy adopted my Order and Report-Recommendation dismissing plaintiff's complaint without prejudice, and sent the case back to me to conduct an initial review of the amended complaint. (Dkt. No. 10).

## I.   IFP Application

In my initial order, I reviewed plaintiff's IFP application, stating that she is unable to pay the filing fee. (Dkt. No. 6 at 1). After reviewing her application, I found that plaintiff is financially eligible for IFP status. (*Id.*)

However, I also noted that, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case ***at any time*** if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii) (emphasis added).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*,
550 U.S. at 555).

## II.    <u>Factual Background and Proposed Amended Complaint</u>

Plaintiff is attempting to sue her former employer, GC Services/Apple[1] ("GC
Services").  Plaintiff commenced employment with GC Services on June 26, 2019 as a
"home-based" customer service representative.  (AC at 1).  GC Services operates as an
outsourcing provider of call center management for companies such as Apple.  (*Id.* at
2).

Plaintiff states that on January 25, 2020, she "outlined"[2] a letter of resignation
from GC Services for reasons including "being annoyed," "intolerable [sic]
unreasonable communication," and "constant sabotaging of the plaintiff."  (*Id.* at 1).
Her resignation was to be "affected on February 3, 2020 and February 2, 2020."  (*Id.*).
However, on January 28, 2020, plaintiff's manager Amber Hillert "terminated" plaintiff
by making her resignation effective "immediately."  (*Id.*).  Plaintiff states that,
according to GC Services, she was terminated because she moved from Nevada to New
York in October of 2020.[3]  (*Id.* at 2).

---

[1]As set forth in my previous order and report-recommendation, plaintiff is not suing "Apple."
(Dkt. No. 6 at 3 n. 2).

[2]Plaintiff has attached to her complaint, as Exhibit 3, an "email of resignation," sent to GC
Services' human resources department on January 24, 2020.  (*Id.* at 32).

[3]The exhibits attached to and cited in plaintiff's amended complaint, including an airline
boarding pass (AC at 34) and documentation evidencing plaintiff's contract for services with Spectrum
Cable Services in New York (*Id.* at 33), suggest that this is a typographical error, and that  plaintiff
moved to New York in October *2019.*

Plaintiff claims that she "knew the termination was forthcoming." (*Id.* at 3). She states that both Ms. Hillert and Ms. Hillert's manager, "Andrea," refused to address plaintiff's concerns regarding a lack of communication. (*Id.*). Plaintiff states that she was not given the same opportunities as other agents of GC Services, and Ms. Hillert would not allow plaintiff to participate in "mandatory aspects" of her job, including "team meeting, coaching and training." (*Id.* at 4). Plaintiff states that she signed a "binding employment contract" during the training process that outlined her mandatory duties. (*Id.*). As best this court can interpret from the amended complaint, plaintiff was prevented from engaging in the mandatory duties of her position until her "last 4 months of employment," during which time "major issue[s]" arose regarding "breach of contract due to the written warning" plaintiff received. (*Id.*).

Plaintiff alleges that, according to the "employment contract agreement," employees will "only receive three written warning[s] before termination." (*Id.*). Plaintiff received her first written warning for "RONA" calls. (*Id.* at 6). According to plaintiff, a RONA call occurred when an incoming call was "dropped" due to overlap with other incoming calls. (*Id.*). It was the plaintiff's "responsibility by contract" to have "call waiting" and "voice messages" enabled, in order to avoid dropped incoming calls. (*Id.*). Plaintiff disputes her first written warning, stating that she had her cable company enable the necessary call waiting and voice messages, as required. (*Id.*). Plaintiff states that GC Services's technical support team was, in fact, responsible for the RONA issues. (*Id.*). Plaintiff claims that she "couldn't secure 'tech' for the RONA [calls]." (*Id.*). Plaintiff alleges that she could not obtain an email response from her

4

manager when she disputed her first written warning.  (*Id.*).

Plaintiff states that her second written warning was for transferring incoming calls to the "fraud department," which was not appropriate.  (*Id.*).  Plaintiff alleges that she only received coaching regarding this issue after the warning.  (*Id.*).  Plaintiff states that, according to Ms. Hillert, the "Apple Representative wanted the plaintiff terminated immediately."  (*Id.*).

Plaintiff states that she sent several emails in dispute of her second written warning.  (*Id.* at 5).  However, plaintiff claims that she could not get Ms. Hillert to reply to her emails, and Ms. Hillert would only address the issue with plaintiff by telephone. (*Id.*).  Plaintiff never received an email reply regarding "any issue" she wished to address with management.  (*Id.*).  Plaintiff states that she had hoped to dispute the two written warnings she received, however she was told that although she had "the opportunity" to dispute the written warnings, it would not change the outcome, and the written warnings would remain in her employee file.  (*Id.*).  Plaintiff states that she could not confirm, through email, the accuracy of such information.  (*Id.*).

Plaintiff also claims that she never received any "verbal warnings," despite it stating in her "employment contract" that a " 'written warning' will be followed by a 'verbal warning.'"[4] (*Id.*).

Plaintiff states that she was told to use "PRs" to provide customer assistance on calls, however it took time to get through the "over 2000 amount of information on

---

[4]Based on the Training Attendance Policy attached to plaintiff's amended complaint, which plaintiff refers to when discussing her "binding contract," the sequence of corrective action was actually verbal warning, written warning, final warning, then separation.  (AC at 39).

every question asked by customers." (*Id.*). Employees received written warnings when a customer was left on hold "for no more than 2 minutes at a time or less." (*Id.*). Plaintiff states that she should not have been given a written warning before a verbal warning, and "the extent of the information to assist the customers could not be executed 100% without mistakes[.]"[5] (*Id.*). Plaintiff alleges that other employees were "allowed more chances to keep their job." (*Id.*).

Plaintiff sets forth a variety of other complaints regarding her treatment as an employee of GC Services. Plaintiff received "occurrences"[6] for returning from breaks several minutes late, despite exceptions that were made for other employees. (*Id.* at 8). Plaintiff attempted to dispute these occurrences, however management did not respond. (*Id.*). Plaintiff states that she also had trouble with her "Q n A," which apparently involves an "Apple representative" monitoring the calls of 500 agents. (*Id.*). Plaintiff states that her Q n A was "lowered" from 90% to 67%, and that she met twice per week, with two different managers by video, while other agents did not have such meetings. (*Id.*). Plaintiff states that she asked for a "call sheet," and her score went back up to 97%. (*Id.*).

Plaintiff claims that she did everything to try to prevent additional written warnings, but that Ms. Hillert dropped plaintiff's Q n A back down to 70% when she questioned plaintiff about a call that may not have been transferred properly. (*Id.* at 9).

---

[5]It is unclear whether plaintiff received a warning, written or verbal, in association with her use of the "PR" system.

[6]"Ten 'occurrences' led to a termination." (AC at 8.) Plaintiff states that she had seven occurrences at the time of her termination. (*Id.*).

Plaintiff states that management was just looking for a way to terminate her, and that "other" agents were not "receiving the same attention." (*Id.*). Plaintiff describes an "incentive" game created by management, for which "still today the plaintiff holds the best count." (*Id.* at 9-10). Plaintiff then describes "Slack," a social platform for communication within the company. (*Id.* at 10). Plaintiff states that "Slack" must be opened at the beginning of an employee's shift so that the managers could communicate with the employees. (*Id.*). Employees received a "verbal or written warning" if they did not respond to a manager's message on Slack. (*Id.*).

Plaintiff states that when she first met Ms. Hillert, she asked plaintiff "How did you become employed by GC Services?" (*Id.* at 10-11). Plaintiff believes this was an inappropriate question, and states that she began to question her employment from that time, and believed that "termination would occur." (*Id.* at 11). Plaintiff states that she requested a change of manager at the beginning of her employment, and that she went to Ms. Hillert's manager, and then to someone named "Candy Keeme." (*Id.*). Although plaintiff was told that a video meeting regarding her concern would be addressed, the meeting with Candy Keeme was postponed without a new appointment date. (*Id.*). Plaintiff states that she was "more than willing to resign to prevent termination." (*Id.*).

Plaintiff states that with all the "mandatory overtime," "constant Q n A," "occurrences," "negative video meetings," and her attempt to communicate with her managers, plaintiff did her best to prevent the "written warnings," but there was nothing she could do. (*Id.*). Plaintiff seeks substantial monetary relief. (*Id.* at 26-27).

## DISCUSSION

As previously discussed, plaintiff's original complaint was dismissed with leave to amend her Title VII claim.  (Dkt. No. 6 at 19).  The remainder of plaintiff's complaint was dismissed for lack of subject matter jurisdiction.  (*Id.*).  In the amended complaint presently before this court, plaintiff appears to assert various state and federal law causes of action.  The court will discuss each of the causes of action cited by plaintiff to determine whether her allegations sufficiently state a claim for which relief may be granted, pursuant to 28 U.S.C. § 1915.

### III.   **Federal Claims**

#### a.   **Federal Tort Claim**

Plaintiff asserts a "Federal Tort Claim" pursuant to 28 U.S.C. § 2671 in her amended complaint.  (AC at 18, 21).  The same cause of action was raised by plaintiff in her original complaint, however pursuant to my recommendation it was subsequently dismissed by Judge McAvoy, without leave to amend, for lack of subject matter jurisdiction.  (Dkt. Nos. 6 at 13-15; 10).  This court continues to lack subject matter jurisdiction over plaintiff's alleged Federal Tort Claim, and plaintiff's cause of action in this regard should be dismissed for the same reasons more specifically set forth in my July 9, 2020 order and report-recommendation. (*Id.*)

#### b.   **Title VII**

Although plaintiff's amended complaint provides more information surrounding her Title VII cause of action, her factual pleadings remains insufficient to state a claim under the federal statute.  Without question, a Title VII violation may be plead relative

8

to a "hostile work environment" or a "constructive termination," as appears to be alleged by plaintiff in her amended complaint. (AC at 12, 18-19, 26). *See Collins v. Res. Ctr. for Indep. Living*, No. 6:17-CV-925 (LEK/TWD), 2018 WL 5983377, at *11-12 (N.D.N.Y. Nov. 14, 2018) (discussing nuances between the two subcategories of a Title VII claim). However, a necessary element required of a Title VII claim, regardless of the alleged adverse action, is that such action was carried out because plaintiff is a member of a protected class. *Id.* In her amended complaint, plaintiff specifically alleges that she was discriminated against on the basis of her age, gender, family status and disability. (AC at 20).

At the outset, age, family status and disability are not included as protected classes under Title VII. *See Volpe v. Connecticut Dep't of Mental Health & Addiction Servs.*, 88 F. Supp. 3d 67, 72 (D. Conn. 2015) ("The plain language of Title VII shows that it only protects against employment discrimination because of . . . race, color, religion, sex, or national origin. . . . Courts have interpreted membership in the protected classes narrowly and strictly textual. Status in groups outside of one of the named protected classes . . . does not confer a right of action under Title VII."). Thus, plaintiff cannot sustain a Title VII claim alleging discrimination on these bases.

Moreover, although plaintiff's sex is a protected class for purposes of a Title VII claim, the chief issue remains that plaintiff has in no way alleged that she was terminated, or subject to a hostile working environment, *because* she is a woman. "Protected class membership, standing alone, does not state a Title VII claim." *Blue v. City of Hartford*, No. 3:18-CV-00974, 2019 WL 1559430, at *3 (D. Conn. Apr. 10,

2019).  There must be a nexus between the protected class and the adverse employment action or the disparate treatment.  *Id.* at *2-3.  As with plaintiff's original complaint, there is nothing in the amended complaint to suggest that GC Services' treatment of plaintiff, as alleged, was motivated by plaintiff's gender.  According to her allegations, plaintiff was both terminated and subject to a "hostile environment" by female employee-managers of GC Services.  Plaintiff's factual allegations describing their alleged misconduct are devoid of any reference to her gender, or inference that she was treated differently because she is female.  Because plaintiff has failed to cure the defect which was the basis of Judge McAvoy's dismissal of her Title VII claim, namely the failure to plead a nexus between plaintiff's gender and the alleged adverse action of her employer, this court must recommend dismissal.

### c.    ADEA Claim

In her amended complaint, plaintiff also cites, for the first time, the Age Discrimination in Employment Act of 1967 ("ADEA") as an additional basis for her action against GC Services.  In order to sufficiently plead a cause of action under the ADEA, plaintiff must allege the following elements: (1) the plaintiff's membership in a protected class; (2) the plaintiff's qualification for a particular position of employment; (3) an adverse employment action by the defendant employer; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation."  *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 170-71 (E.D.N.Y. 2017) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).  A complaint need not allege that age was the employer's only consideration,

but rather that the adverse employment action would not have occurred without it. *Id.* (citing inter alia *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 176 (2009)); *see also Bohnet v. Valley Stream Union Free Sch. Dist*., 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014), *aff'd*, 594 Fed. App'x 53 (2d Cir. 2015) (explaining that the complaint need only allege sufficient facts to make plausible the conclusion that a plaintiff would not have endured an adverse employment action "but for" her age).

Here – as with her Title VII claim[7] – plaintiff's failure to plead any facts suggesting that GC Services adverse actions were motivated by discriminatory animus, in any way, proves fatal to her ADEA claim. Upon careful review of plaintiff's amended complaint, there is simply no suggestion that management terminated her, or subjected her to a hostile work environment, because of her age. The only mention of plaintiff's age is twenty pages into the amended complaint, when she summarily states that she is "54 years old, more than 5-30 years older than most of the employees and managers." (AC at 20). However, the fact of plaintiff's age, by itself, is insufficient to plead an ADEA claim, and plaintiff has otherwise failed to meet the minimum requirements to adequately plead an age discrimination claim. *See Bohnet v. Valley*

---

[7]Notably, the causation standard to prove a discrimination claim under ADEA is more stringent than that required of a Title VII claim. A plaintiff alleging age discrimination under the ADEA must allege that age was the "but-for" cause of the employer's adverse action. *See Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 114 (2d Cir. 2020) ("The ADEA requires a plaintiff to assert that his age is the "but-for" cause of the alleged adverse employment action.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. at 176). However, the "motivating factor" standard still applies to discrimination claims under Title VII based on race, color, religion, sex, or national origin. "Hence, a plaintiff in a Title VII case need not allege 'but-for' causation." *Blue v. City of Hartford*, 2019 WL 612217 at *5. Here, because plaintiff has failed to allege any facts even remotely associating GC Services' adverse action to her status in a protected class, the differing causation standards do not affect the court's analysis at this early pleading stage.

11

*Stream Union Free Sch. Dist.,* 30 F. Supp. 3d at 180 (explaining that the complaint

need only allege sufficient facts to make plausible the conclusion that a plaintiff would

not have endured an adverse employment action "but for" her age); *see also Littlejohn*

*v. City of New York*, 795 F.3d at 312.

## IV.    <u>State Claims</u>

In her amended complaint, plaintiff raises several state law causes of action,

including intentional infliction of emotional distress, tortious interference with a

contract, and breach of contract.  (AC at 13-17).  As to subject matter jurisdiction, this

court declines to recognize supplemental jurisdiction over plaintiff's state law claims,

in light of recommending dismissal of the federal claims which would otherwise

provide the requisite original jurisdiction.  Thus, plaintiff's state law claims may

survive initial review to the extent that she has sufficiently plead diversity jurisdiction.

To properly allege diversity jurisdiction over these state law claims, plaintiff must

allege (1) diversity of citizenship between the parties and (2) an amount in controversy

that exceeds $75,000. *See* 28 U.S.C. § 1332(a).  In her amended complaint and

supplemental filing, plaintiff, a New York resident, alleges that GC Services enjoys a

principal place of business other than New York.  (AC at 2; Dkt. No. 8).  Moreover,

plaintiff claims damages in the amount of $900,000, thus exceeding the jurisdictional

threshold.  (AC at 27).  Accordingly, and solely for the purposes of this initial review,

the court determines that the pleadings sufficiently allege diversity jurisdiction.

Setting aside this court's concerns regarding proper venue (*see* Dkt. No. 6 at 16

n. 17), the court will proceed to consider plaintiff's state based, common law claims in

further detail.

### a.    Intentional Infliction of Emotional Distress

Under New York law, a claim for intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016) (internal quotation marks omitted). With regard to the "extreme and outrageous conduct" element, courts have found liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted).  As the New York Court of Appeals has recognized: "the requirements are rigorous, and difficult to satisfy . . . . [O]f the intentional infliction of emotional distress claims considered by this Court, *every one* has failed because the alleged conduct was not sufficiently outrageous." *Id.* at 57 (emphasis in original) (internal quotation marks omitted); *see also Reynolds v. Vill. of Chittenango,* No. 5:19-CV-416 (GLS/TWD), 2020 WL 1322509, at *9 (N.D.N.Y. Mar. 20, 2020).

Likewise, the allegations of misconduct in plaintiff's amended complaint fail to meet the aforementioned stringent standard.  Construing the facts in a light most favorable to plaintiff, the relevant offensive conduct consisted of: "annoying" coaching and team meetings, a lack of response from management regarding disciplinary issues, unfair allocation of "occurrences,"  "negative video meetings," a lack of access to

13

"mandatory aspects of the job," and other failures by management preventing plaintiff from adequately performing her job.  Although certainly not condoned by this court, GC Services' conduct as alleged by plaintiff is simply insufficient to constitute the "extreme and outrageous" conduct required to maintain a claim for intentional infliction of emotional distress.  *See Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 24-25, 27 (E.D.N.Y. 2016) (dismissing an IIED claim where the plaintiff's managers, among other things, "directed [another supervisor] to create a pretextual paper trail of performance issues regarding [her] performance," and "e-mailed [her] directly threatening termination if she did not attend counseling sessions"); *Thomas v. N.Y.C Dep't of Educ.*, 938 F. Supp. 2d 334, 344, 359 (E.D.N.Y. 2013) (finding that allegations that the plaintiff was subjected to, among other things, "false accusations, verbal abuse, harassment, loss of employment, . . . threat of bringing or prosecution of false charges used to coerce or force resignation, [and] improper initiation and conduct of disciplinary actions" did not rise to the level of extreme and outrageous).  Accordingly, plaintiff's cause of action in this regard should be dismissed.

###    b.    Tortious Interference with a Contract

Plaintiff states that Ms. Hillert and her "employer" intentionally damaged plaintiff's "contractual or business relationships" with GC Services.  (AC at 15-16).  Ms. Hillert, however, has not been named as an individual defendant in this matter.  Plaintiff has only named GC Services as a defendant in this action, her former employer with whom she alleges to have had a "binding contract agreement." Based on the amended complaint, Ms. Hillert was employed by defendant GC Services, and acted as

14

plaintiff's supervising manager, at all relevant times during plaintiff's employment. "Under New York law, a plaintiff who brings a tortious interference claim must allege that the defendants were not parties to the contract." *Wolongevicz v. Town of Manlius*, No. 5:17-CV-933(BKS/DEP), 2018 WL 3769857, at *17 (N.D.N.Y. Aug. 8, 2018) (quoting *Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996)). Thus, plaintiff cannot sue GC Services for tortious interference with the alleged employment contract between them, and this cause of action should be dismissed.

### c.    Breach of Contract

"New York has a well-established at-will employment doctrine: [A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Langenkamp v. Olson*, 628 F. App'x 50, 51–52 (2d Cir. 2015) (quoting inter alia *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329 (1987)). However, the presumption that an employment is at-will may be rebutted, and a claim for breach of contract may be recognized, under certain circumstances. *See Slue v. New York Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 357–58 (S.D.N.Y. 2006) ("Even though New York does not recognize the tort of wrongful discharge, New York carves out some exceptions to the at-will doctrine in a few narrow circumstances.") (internal citation omitted).

In her amended complaint, plaintiff makes numerous references to a "binding" employment agreement with her employer. Specifically, plaintiff claims that GC Services' "breached" a purported employment contract relative to certain disciplinary policies in place. (AC at 4). Plaintiff has attached a document entitled "Training

15

Attendance Policy" to her amended complaint in further support of this contention. (AC at 39). Accordingly, and in the absence of any allegation by plaintiff of the existence of a contract establishing a fixed duration of her employment, the court construes plaintiff's argument to be that GC Services' employment policies created an implied contract. *See Sharkey v. J.P. Morgan Chase & Co.*, No. 10–CV–3824, 2011 WL 135026, at *8 (S.D.N.Y. Jan. 14, 2011) (construing plaintiff's breach of contract claim arising from J.P. Morgan Chase's Code of Conduct as an implied contract claim); *Soto v. Federal Express Corp.*, No. 06–CV–5413, 2008 WL 305017, at *4 (E.D.N.Y. Feb. 1, 2008) (construing plaintiff's breach of contract claim arising from defendant's employment handbook and manual as an implied contract claim).

New York recognizes an employee's action for breach of implied contract against an employer based on its written policies upon a showing that "(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment." *Ubal-Perez v. Delta Air Lines Inc.*, No. 13-CV-2872, 2014 WL 223227, at *5 (E.D.N.Y. Jan. 21, 2014). However, in recognizing these causes of action the New York Court of Appeals has admonished that "routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 278 (S.D.N.Y. 2011), *aff'd*, 506 F. App'x 47 (2d Cir. 2012) (citing *Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (2001)).

16

In this case, plaintiff's allegations do not meet the pleading requirements necessary to sustain a claim for breach of implied contract.  At the outset, plaintiff's allegation of an express limitation on GC Services' right of discharge under the strict New York guidelines are weak, at best.  Although plaintiff alleges, and cites, to a written disciplinary policy wherein an employee may be terminated after receiving a certain number of warnings, she does not go so far to state that such policy imposed a limitation on GC Services' right to terminate an employee at will.  *See Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304-05 (1983) (dismissing claim for failure to state cause of action where plaintiff only "made general references to an employer's manual" and "cited no provisions pertaining to the right to termination[.]"); *Topalli v. Multiple Sclerosis Research Ctr. of New York, Inc.*, 08 Civ. 8162, 2009 WL 10738620, at *5 (S.D.N.Y. July 20, 2009) (dismissing complaint where allegations in plaintiff's complaint "referenced the existence of written policies, but cited no specific provisions nor any portions of his individual contract that expressly limit defendants' right to terminate employment at-will.").

Nevertheless, even assuming that plaintiff has sufficiently plead a limitation on GC Services' right to discharge its employees, she has not alleged that she detrimentally relied on the policies cited in "accepting or continuing employment," as is required under New York law.  Plaintiff's amended complaint asserts that, as a result of her termination, she "suffered emotional distress," "became ill," "worried about getting evicted and unable to find another job in time," and became depressed.  Even accepting plaintiff's allegations as true, they do not amount to detrimental reliance, and the failure

to plead this element has proven fatal to plaintiffs' claim for breach of contract. *See Wait v. Beck's N. Am., Inc.,* 241 F. Supp. 2d 172, 185 (N.D.N.Y. 2003) ("Further, aside from her conclusory allegation of detrimental reliance upon BNA's policies, plaintiff pleads no set of facts that, if true, would support a finding of reliance sufficient to find the formation of a contract."); *Lazaro v. Good Samaritan Hosp*., 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999) (granting employer's motion to dismiss breach of contract claim because plaintiff "failed to plead in her amended complaint detrimental reliance, a required element to rebut at-will employment under New York law"); *Waddell v. Boyce Thompson Inst. for Plant Research, Inc.*, 92 A.D.3d 1172, 1173 (3d Dept. 2012) (affirming underlying court's dismissal of complaint for failure to state a cause of action where "the essential element of detrimental reliance . . . was lacking.").[8]

Because plaintiff has failed to alleged what actions she took that could conceivably constitute detrimental reliance, plaintiff's implied contract claim fails. Accordingly, this court recommends dismissal.

## V.    <u>Opportunity to Amend</u>

### A.    **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

---

[8] *Compare with Langenkamp v. Olson*, 628 F. App'x 50, 52 (2d Cir. 2015) (finding plaintiff's allegations of detrimental reliance sufficient to state a cause of action where she alleged that she "suffered damages, among other reasons, as a result of her signing a one-year lease for an apartment in New York, now for which she has no need.") (internal quotations omitted).

## B.    Application

This court has already afforded plaintiff the opportunity to amend, and she has been unable to plausibly associate the defendant's alleged actions to any statutorily or constitutionally prohibited conduct.  Thus, the court will recommend dismissing plaintiff's complaint without the further opportunity to amend.

### CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 7) be **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:   December 9, 2020

Andrew T. Baxter
U.S. Magistrate Judge